STOKER, Judge.
In this case the mother of two children was originally granted custody of them. The mother, now Brenda Gail Cooper Johnston, appeals from a judgment of court terminating her custody and awarding it to the father, James William Cooper. The parties were judicially separated by judgment of the Twenty-eighth Judicial District Court, Parish of LaSalle, Louisiana, on April 16, 1974. Brenda Gail Cooper was granted custody at that time and James William Cooper was ordered to pay child support. The parties were divorced by the same court on July 28, 1975. The matter came to this court in Cooper v. Cooper, 336 So.2d 928 (La.App. 3rd Cir. 1976). As a result of that appeal James William Cooper’s child support obligation became the sum of $210.00 per month for the two children.
The sole issue in this present appeal is whether the trial court applied a proper standard in changing custody of the children, terminating the mother’s custody of over five years and awarding it to the father. The trial judge stated that the basis for making the change was that he could more easily control the exercise of visitation rights. At that time Mr. Cooper resided *172 within the court’s jurisdiction but Mrs. Johnston lived in Oklahoma with her present husband. Numerous collateral issues are raised on behalf of Mrs. Johnston which are not before us.[1]
Relations between the parties have been acrimonious and there has been continual litigation concerning unpaid alimony and support and exercise of visitation rights. Both parties have remarried. On her part Mrs. Johnston has frustrated Mr. Cooper’s efforts to exercise his visitation rights. Mr. Cooper retaliated by not remitting support payments due. The record does not establish any equities in favor of either party insofar as the personal character of each may be concerned. Also, the welfare of the two boys would not be affected adversely or enhanced by being with one parent as opposed to the other, absent considerations related to the place of residence of the two parents.
All of the parties have a center of interest in LaSalle Parish, Louisiana. The children have spent most of their lives in Jena in LaSalle Parish. James Todd Cooper was born October 3, 1965, and William Brett Cooper was born on August 7, 1968. In the early years after the separation the two boys resided largely with Mrs. Johnston’s parents who live in Jena. They attended school there. Before Mrs. Johnston’s remarriage she appears to have lived in places other than Jena in order to obtain employment. For some time she lived in Natchez, Mississippi, or other nearby places, because she had a job there. Although the children were in Jena and Mr. Cooper lived in or near Jena he was not allowed any non-judicially ordered visitation privilege. Mrs. Johnston instructed her parents that Mr. Cooper was not to be allowed any visitation with the children he was not legally entitled to.
In late October, 1978, Mrs. Johnston married and moved to Memphis, Tennessee. At that time she took the two sons with her and they resided with her and her second husband thereafter. In 1979 Mrs. Johnston and her husband moved to Oklahoma. After the two boys were taken from Jena, Mrs. Johnston refused to give Mr. Cooper her address or let him know where his children resided. She maintained contact with him but furnished him with post office box addresses only. She did this with instructions that he could mail his support checks to that address.
Mr. Cooper made trips to both Tennessee and Oklahoma in order to pick up the children for scheduled visitation periods, but was unable to locate the Johnston family. In June of 1980 Mr. Cooper made a trip to Stillwell, Oklahoma, to pick up the children. The Johnston’s refused to give him their address before he left, but advised him to call when he arrived. When he arrived and called by telephone as instructed he received some sort of recorded response but the Johnstons never answered. Mr. Cooper enlisted the aid of the town marshal but neither he nor anyone else knew the John-stons. After a fruitless weekend searching for the Johnstons, Mr. Cooper was forced to return home.
Mr. Cooper sought the aid of the court (28th Judicial Court in LaSalle Parish) and received numerous protective orders. These orders proved ineffective. After the trial on Mr. Cooper’s petition for change of custody, at which the court also heard evidence in a rule by Mrs. Johnston seeking past due child support and a judgment holding Mr. Cooper in contempt, the trial court ruled from the bench. In pertinent part the ruling from the bench was as follows:
*173 “I think the law of Louisiana is such that it recognizes regardless of whether a parent is financially supporting his child or not, that visitation is healthy for the child. I suppose that’s why visitation privileges are viewed as they are. Because they are healthy and in the best interest of the child.
“Throughout the long unfortunate history of this case, we have repeatedly looked for some sort of visitation scheme that would work. We have been absolutely one hundred percent foiled because Mrs. Cooper, Mrs. Johnson [sic] now, has simply failed to cooperate.
“I want to direct that Mr. Cooper pay into the Registry of the Court, within twenty days of today, all past due support.
“I change custody. I’m doing that for the reason that I think that visitation is healthy for the children. Mr. Cooper is here, and if he does not allow Mrs. Cooper visitation, I can reach him and I can enforce my order against him. One of the main reasons I have in changing custody is an attempt to enforce a pattern of visitation between these parents in a fashion where I can make the order workable. I’m influenced by the fact that Mrs. Cooper has moved as often as she has. I’m influenced by the fact that she slapped her child with a belt in the face because he indicated that he wanted to visit his father. I think that the children need to be in a situation and in the hands of a parent who will encourage the child to visit on a regular pattern in compliance with the Court Order. I will expect Mr. Cooper to do that.
“Mrs. Cooper will be entitled to all the visitation that Mr. Cooper was entitled to when he was under the previous order.”
The trial judge in his ruling recognized that the obligation of paying judicially ordered child support and the obligation to allow and not frustrate court-fixed visitation privileges are separate and distinct. His ruling and the formal judgment sought to enforce both. As appellant, Mrs. Johnston argues that the trial court cannot base a change in custody solely on what may be more practical and convenient for the court. She urges that legal means, such as contempt proceedings, are available if indeed such protection for Mr. Cooper is justified.
In approaching the complaint in this appeal we note that at the present time the sole criterion applicable to change of custody cases is the best interest of the child. Bordelon v. Bordelon, 390 So.2d 1325 (La. 1980). In Flournoy v. Flournoy, 392 So.2d 1097 (La.App. 3rd Cir. 1980), No. 7980 our docket, and Autrey v. Highbaugh, 395 So.2d 464 (La.App. 3rd Cir. 1981), No. 8050 our docket, we discussed the standard of appellate review of custody cases as affected by. the amendment of Article 157 of the Louisiana Civil Code and the opinion of the Louisiana Supreme Court in the Bordelon case. In Bordelon the Supreme Court stated:
“This Court has clearly stated that in child custody cases, the procedure for appellate review is to give great weight to the determination of the trial judge, and to overturn a determination only when there is a clear abuse of discretion. Fulco, supra; Cleeton v. Cleeton, 383 So.2d 1231 (La. 1980). This test is substantially similar to the rule applied by the appellate court, which prevents the upsetting of a trial court determination of fact unless it is ‘clearly wrong’. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1979). Under these rules, a conclusion reached by a trial court derived from the facts is entitled to just as much weight as a conclusion that certain evidence establishes a fact.”
We recognize that the basic issue to be decided in this case goes beyond the mere matter of fact finding. However, we do note that the record amply supports the implied finding of the trial court that Mrs. Johnston has been uncooperative and has so affirmatively frustrated Mr. Cooper’s efforts to exercise his visitation rights that the court’s protective orders have had little practical effect. We also recognize that, despite the powers given to courts having jurisdiction over custody of children, a parent with custody who maintains a residence *174 out-of-state, particularly at some distance, is in a position to set at naught almost any efforts of the home-state court to control its orders regarding visitation. Courts have ' found no empirical solutions to deal with such interstate domestic problems.
We take it that no citation of authority is required to establish that visitation with both parents as often as possible is in the best interest of the children of the broken marriage. It is our conclusion, as evidently it was the trial court’s, that the change of custody from Mrs. Johnston to Mr. Cooper will not affect their best interest insofar as concerns the particular parent with which they may live. However, as concerns all else the change would appear to be to their best interest. Jena, Louisiana, is a center of interest in the life and affairs of the boys in question. Most of their lives were lived there and they went to school there. Their maternal grandparents with whom they lived much of the time after the separation of their parents live there. It is Mrs. Johnston’s former home. In view of these factors we think the pragmatic reasons given by the trial court are valid.
In affirming the custody change we do not wish to lay down a rule or announce a policy that a trial court may make a custody change merely to facilitate the enforcement of orders in domestic relation cases. Here we find the facts so extraordinary that we are not prepared to hold that the trial court abused its discretion or was clearly wrong.
AFFIRMED.

. In response to Mr. Cooper’s petition for change of custody filed on October 27, 1978, appellant filed an exception of no right and no cause of action on November 7, 1978. These exceptions were referred to the merits. Although the trial court’s judgment of September 5, 1980, granting the custody change does not mention these exceptions, we think the trial court impliedly overruled the exceptions. Mr. Cooper certainly had a right of action and the petition set forth a cause of action. Specifically, the appellee alleged that the children were neglected and that appellant left them in the care of their maternal grandparents while appellant resided out of state. Appellee alleged generally that it was in the best interest of the children to be in his custody. The evidence at least supported the general allegation.